UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-276-FDW

| | |
|---|---|
| MARVIN H. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KENNETH LASSITER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of the Amended Complaint, (Doc. No. 5). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 11).

**I.   BACKGROUND**

*Pro se* incarcerated Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 along with four other inmates alleging, *inter alia*, that their forced participation in an RDU Program at Marion Correctional Institution violates their constitutional rights. (Doc. No. 1). The Complaint was so seriously deficient that the Court was unable to complete initial review. On May 15, 2018, the Court ordered Plaintiffs to file IFP applications and an Amended Complaint within 21 days. (Doc. No. 3). The Court cautioned Plaintiffs that failure to comply would probably result in dismissal. The Court also informed Plaintiffs that the filing of more than one Amended Complaint would probably result in the opening of separate § 1983 cases. Plaintiffs did not file a single Amended Complaint pursuant to the Court's instruction and the case was severed. (Doc. No. 6).

Plaintiff Johnson names the following as Defendants in his Amended Complaint in their official capacities: Director of Prisons Kenneth Lassiter, Marion C.I. Superintendent Hubert Corpening, Case Manager/RDU Programmer Gregory Swink, Assistant Superintendent Donny

1

Watkings, and RDU-Director Jenny Jenkins.

Construing the Amended Complaint liberally and accepting it as true, Plaintiff Johnson arrived at Marion C.I. on January 26, 2017. Upon entering the RDU Program, he was forced to either send home or donate his legal books, literature, and religious literature. None of Plaintiff Johnson's property exceeded the two cubic foot limit. He failed to meet the deadline for his federal habeas corpus petition, which was March 8, 2018, because he did not have the needed legal books and literature. When Plaintiff Johnson said he needed his religious literature, he was told "Rastafarian or Moorish science was not real religions so I shouldn't feel bad." (Doc. No. 13 at 5). His personal privacy was invaded when he was forced to talk about or fill out a survey regarding his past and his present medical, mental health, criminal charges, and family issues, which has exposed to psychological harm, and Sergeant Pruett called him a "crack baby." (Doc. No. 13 at 5). Plaintiff Johnson has been forced to do six months in segregation with no procedural due process. It is fraud to hold him in segregation from March 10, 2018, to September 10, 2018, while his status in the prison remained "Reg. Population." (Doc. No. 13 at 5). Plaintiff Johnson claims that he has completed the RDU Program but is still in segregation. He is being harassed continuously and pepper spray was put in his food three times. His injuries have included psychological harm, separation from his immediate family, "assassination of character," violation of federal constitutional rights and privileges, discrimination, and the right to practice his religion. (Doc. No. 5 at 5). Plaintiff Johnson seeks on behalf of himself and participants in the "class" damages of $250,000, removal from the RDU Program, and cancellation of the RDU Program. (Id.).

## II. SCREENING STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief.

Id.

## V. DISCUSSION

**(1) <u>Claims on Behalf of Others</u>**

Plaintiff appears to attempt to raise claims on behalf of others including a "class." To the extent that the Plaintiff attempts to proceed as a class action, this motion is denied. See <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir. 1975) (the Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class); <u>see</u> also <u>Hafner v. Office of Thrift Supervision</u>, 977 F.2d 572 (4th Cir. 1992) (holding that, because plaintiff is *pro se* and is not an attorney, although he filed pleadings purporting to represent a group, he is "barred from representing anyone other than himself.")(unpublished). Plaintiff's attempt to present claims on behalf of others are also denied because a prisoner cannot file a lawsuit on behalf of others. See <u>Hummer v. Dalton</u>, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); <u>Oxendine v. Williams</u>, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

Therefore, to the extent the Amended Complaint seeks relief on behalf of a "class" or individuals other than himself, these claims are dismissed.

**(2) <u>Unnamed Defendants</u>**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); <u>see</u> <u>Myles v. United States</u>, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, <u>Haines</u>, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," <u>Pliler v. Ford</u>, 542 U.S. 225 (2004).

The body of the Amended Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

**(3)   Soverign Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, a lawsuit against an officer in his official capacity is, in substance, a claim against the governmental entity and should be subject to the same analysis. See Almone v. City of Long Beach, 478 F.3d 100, 106 (2d Cir. 2007); see Hutto v. S.C. Retirement Sys., 773 F.3d 536, 549 (4th Cir. 2014) (State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State). Whether an officer is deemed a "state official" depends at least in part on state law. See Mt. Healthy City Sch. Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977).

However, a state official in his or her official capacity, when sued for injunctive relief,

would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 93 (1989) (quoting Graham, 473 U.S. at 167, n. 14). A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Plaintiff has chosen to sue Defendants only in their official capacities. See (Doc. No. 5 at 2-3, 12). His claims for damages and retrospective injunctive relief are barred by sovereign immunity. The Amended Complaint is therefore dismissed except insofar as Plaintiff requests prospective injunctive relief.

**(4) Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(A) Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process,

so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Construing the Amended Complaint liberally, Plaintiff appears to allege that his property loss was due to RDU rules that Defendants created and implemented that are contrary to DPS policy, rather than from a random, unauthorized action. Therefore, this claim will be permitted to proceed.

### (B) Segregation

A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison

management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

Plaintiff appears to allege that, as part of the RDU Program he has been placed in segregation for six months without due process. However, Plaintiff does not explain how the conditions of his confinement there pose an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, this claim is too vague and conclusory to proceed and it will be dismissed.

**(5)** **Privacy**

There is no "right of privacy" found in any specific guarantee in the Constitution. See Paul v. Davis, 424 U.S. 693, 712 (1976). However, the United States Supreme Court has recognized that some of the specific constitutional guarantees have created "zones of privacy" that impose limits upon governmental power. Id. at 712–13. The guarantee of personal privacy is limited to those rights that are "'fundamental' or 'implicit in the concept of ordered liberty.'" Id. at 713 (quoting Palko v. State of Connecticut, 302 U.S. 319, 325 (1937)). The rights included in such "zones" include the right to suppress evidence seized in the course of an unreasonable search, or matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. Id. at 713.

Plaintiff's allegation that he has been forced to talk about, or fill out a survey, regarding his medical and mental health history, criminal charges, and family issues, states a plausible claim that his right to privacy has been violated.

**(6)** **Freedom of Religion**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S.

Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). Prison officials may impose restrictions on prisoners' rights if those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In making this determination, a court considers the following factors: (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the inmate has an alternative means of exercising the constitutional rights; (3) the impact accommodating the inmate's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist. Turner, 482 U.S. at 89, 99. When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547 (citations omitted).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests."

9

O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

Plaintiff alleges that he was deprived of his religious literature and, when he said he needed his religious literature, he was told that Rastafarian or Moorish Science is not a real religion. This claim is insufficient to pass initial review because Plaintiff's vague and conclusory allegations fail to establish that he had a sincere religious belief or that the official action or regulation substantially burdened his exercise of that belief.

**(7)** **Access to courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that he missed his federal habeas corpus deadline because his needed legal books and literature were confiscated. Plaintiff fails to adequately allege how the deprivation of his legal materials resulted in any actual injury. Therefore, this claim will be dismissed.

**(8)** **Discrimination**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

11

It appears that Plaintiff alleges that he is being discriminated against on the basis of his Rastafarian or Moorish Science religion, which he was told are not "real" religions. (Doc. No. 5 at 5). This claim is insufficient to proceed because Plaintiff fails to allege that similarly situated prisoners who are members of another religion are not being similarly treated, *i.e.*, their religious literature has not been confiscated. Therefore, this claim will be dismissed.

**(9)** **Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the

denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that he is being harassed and that there was pepper spray in his food on three occasions. This claim is minimally sufficient to state a claim and will be permitted to proceed.

**(10)** **Fraud**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

The general elements of common-law fraud in North Carolina are: (1) false representation or concealment of a past or existing fact; (2) that was reasonably calculated to deceive; (3) made or done with the intent to deceive; (4) that actually deceived a plaintiff, who had reasonably relied on the deception; and (5) plaintiff suffered damages as a result of his reliance. Myers & Chapman v. Thomas G. Evans, 323 N.C. 559, 374 S.E.2d 385 (1988). To plead a fraud claim properly, a plaintiff must plead with particularity as to each of the substantive elements specified by North Carolina law. Odom v. Little Rock & I-85 Corp., 299 N.C. 86, 91-92, 261 S.E.2d 99 (1980), *disagreed with on other grounds by* Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385 (1988).

Plaintiff alleges that he is being held in segregation while his status reflects a "reg.

13

population" label, which is "fraud, lying to the public." (Doc. No. 5 at 5). Liberally construing the Amended Complaint, it appears that he is attempting to state a claim for fraud under North Carolina law. See (Doc. No. 5 at 3) (striking through "Fed Fraud").

Plaintiff has failed to adequately allege that the inaccurate housing designation was reasonably calculated to deceive, that it actually deceived a plaintiff who reasonably relied on it, or that the plaintiff suffered damages as a result. Therefore, to the extent Plaintiff attempted to state a claim for North Carolina fraud, it will be dismissed.

## VI. CONCLUSION

The Amended Compliant will be permitted to proceed on Plaintiff's claims for prospective injunctive relief for the deprivation of property, cruel and unusual conditions of confinement, and violation of privacy. The remaining claims are dismissed for failure to state a claim upon which relief can be granted and for seeking damages against immune parties pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's claims regarding the deprivation of his property, cruel and unusual conditions of confinement, and deprivation of privacy have passed initial review pursuant to 28 U.S.C. § 1915 for prospective injunctive relief. The remaining claims are dismissed for failure to state a claim upon which relief can be granted and for seeking damages against immune parties pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

2. **IT IS FURTHER ORDERED THAT** Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Lassiter, Corpening,**

**Watkings, Jenkins,** and **Swink** who are current or former employees of NC DPS.

Signed: November 13, 2018

Frank D. Whitney
Chief United States District Judge